UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KINGVISION PAY-PER-VIEW LTD.,
as Broadcast Licensee of the
November 13, 2004, Ruiz/Golota Program,

                   Plaintiff,

-against-

MARIO W. LALALEO, Individually and as
officer, director, shareholder and/or principal of
Restaurant Las Flores, Inc. d/b/a Las Flores
Restaurant a/k/a Las Flores Rest.; and
RESTAURANT LAS FLORES, INC.
D/B/A LAS FLORES RESTAURANT
A/K/A LAS FLORES REST.,

                   Defendants.
----------------------------------------------------------------x



MEMORANDUM and ORDER

05-CV-2659 (SLT)

**TOWNES, United States District Judge:**

    Plaintiff Kingvision Pay-Per-View Ltd., is a franchised cable television operator which markets and licenses the commercial viewing of boxing events on a pay-per-view basis. In May 2005, plaintiff commenced this action by filing a complaint alleging that defendants intercepted the signal for a boxing event – the November 13, 2004, Ruiz/Golota Program – without authorization and showed it to patrons at Las Flores Restaurant, a Brooklyn establishment with a capacity of approximately 30 persons. In November 2006, after defendants failed to answer or to move to dismiss the First Amended Complaint, plaintiff moved for a default judgment. By order dated February 23, 2006, this Court referred plaintiff's motion to Magistrate Judge Joan M. Azrack for a report and recommendation.

    In a report and recommendation dated March 20, 2006 (the "R & R"), Judge Azrack recommended that this Court grant plaintiff's motion and that a judgment be entered against defendants, jointly and severally, in the amount of $13,575.00. *See Kingvision Pay-Per-View*

*Ltd. v. Lalaleo*, No. CV-05-2659 (SLT) (JMA), slip op. at 12 (E.D.N.Y. Mar. 20, 2006). Of that amount, $1,500.00 constituted statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and $10,000 was enhanced damages for the willful violation of 47 U.S.C. § 605(a). Of the remaining $2,075.00, $1,325.00 was attorney's fees and $750.00 was costs.

On or about March 21, 2006, Judge Azrack disseminated the R & R by uploading a copy onto ECF and by mailing copies to both defendants. The R & R advised the parties that any objections had to be filed within ten (10) days of their receipt of the R & R, and that the failure to file objections within this time period would waive the right to appeal this Court's order. *See Lalaleo*, slip op. at 12. To date, this Court has not received any objections to the R & R from any of the parties.

Under 28 U.S.C. § 636(b)(1), if any party serves and files written objections to a magistrate judge's recommendations within ten days of being served with a copy of thereof, a district court must "make a de novo determination of those portions of the report or . . . recommendations to which objection is made." *Id.* Upon de novo review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Since the parties have not filed any objections to Judge Azrack's prompt and thorough report and recommendation, this Court need not engage in de novo review. *See Thomas*, 474 U.S. at 150. Nonetheless, this Court has reviewed the papers submitted by plaintiff in this case and the reasoning set forth in the R & R. This Court agrees with Judge Azrack's reasoning in all

2

respects, except with regard to her recommendation that this Court award plaintiff $750.00 in "costs," including "a $100 reimbursement of the investigator's fees." *See Lalaleo*, slip op. at 11.

Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails" in an action alleging a violation of 47 U.S.C. § 605(a). Many courts – like the court in *Time Warner Cable of New York City v. Sanchez*, No. 02 Civ. 5855 (GBD) (FM), 2003 WL 21744089 (S.D.N.Y. July 8, 2003), the case cited in the R & R – have construed the term, "full costs," as meaning, "taxable costs." *See, e.g., id.*, at *5; *Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *3 (S.D.N.Y. Nov. 3, 2005) (including the investigator's fee as part of "costs and disbursements"); *Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300 (ARR) (JMA), 2005 WL 2496062, at *6 (S.D.N.Y. Sept. 20, 2005) (implying that investigative costs are taxable costs); *Kingvision Pay-Per-View Ltd. v. Cardona*, No. 03 Civ. 3839 (GBD) (FM), 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) (treating investigative costs as taxable costs). Furthermore, at least two of these courts have held that investigator's fees cannot be awarded because "[t]here is no provision for a prevailing party to be awarded the cost of its investigator" in 28 U.S.C. § 1920, the section defining what expenses can constitute "taxable costs." *Cardona*, 2004 WL 1490224, at *4; *Sanchez*, 2003 WL 21744089 at *5.

Although the term, "full costs," is not defined in the statute, both the plain meaning of the statutory language and the legislative history of § 605(e)(3)(B)(iii) suggest that this term was intended to include expenses other than "taxable costs." First, under 28 U.S.C. § 1920, taxable costs include only the following expenses:

3

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under [28 U.S.C. § 1923];
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

Because this list embodies "Congress' considered choice" as to what expenses should be taxable, courts are not permitted to allow taxation of costs not included in the list. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 440-42 (1987). Attorney's fees are not on the list; therefore, "taxable costs" do not include attorney's fees. Since § 605(e)(3)(B)(iii) implies that "full costs" include "reasonable attorneys' fees," the "full costs" permitted under § 605(e)(3)(B)(iii) both differ from, and can exceed, the "taxable costs" recoverable under 28 U.S.C. § 1920.

Second, what little legislative history exists also supports this broad reading of the term, "full costs." Upon approval of the Cable Communications Policy Act of 1984 – the legislation which added the relevant portions of 47 U.S.C. § 605 – the Chairman of the Senate Committee on Commerce, Science, and Transportation issued the following statement:

> It is the intent of the Committee that the power to direct the recovery of all costs under (3)(B)(iii) shall include reasonable investigative fees (related to the action brought) of an aggrieved party.

Statement of Sen. Robert W. Packwood, Chairman of Comm. on Commerce, Science, & Transp., 130 Cong. Rec. § 14286 (daily ed. Oct. 11, 1984), *as reprinted in* 1984 U.S.C.C.A.N. 4742,

4

4750, 1984 WL 37497 (Leg. Hist.) (1984). Although there is nothing to suggest that Congress as a whole shared the Committee's intent when it enacted the statute at issue, this language at least supports the view that Congress intended "full costs" to include investigative costs.

However, "[t]he legislative history for § 605(e) instructs that the court has the power to direct the recovery of investigative fees, not that the court is required to order such an award." *Int'l Cablevision, Inc. v. Noel*, 982 F.Supp. 904, 918 (S.D.N.Y. 1997). In order to recover investigative costs a plaintiff must make a showing similar to that required to recover attorney's fees. "[A] request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected." *Id.* Thus, a plaintiff must document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate." *Id.*

In this case, the documentation supplied by plaintiff's counsel is insufficient. Although the investigator's invoice, attached as Exhibit D to Plaintiff's Affidavit for Default, indicates that the investigator charged plaintiff for one hour at an hourly rate of $350.00, plaintiff has not adduced any evidence concerning the investigator's qualifications. Accordingly, this Court has no basis for assessing the reasonableness of this rate, except to note that $350.00 per hour exceeds the rate usually awarded to experienced attorneys in this district. *See, e.g., Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners); *Levy v. Powell*, No. CV-00-4499 (SJF), 2005 WL 1719972, at *9 (E.D.N.Y. July 22, 2005) ("In 2003 and 2004, district courts in the Eastern District found rates of between $225.00 and $300.00 for partners to be reasonable."); *LaBarbera v. J.E.T. Resources,*

*Inc.*, 396 F.Supp.2d 346, 352 (E.D.N.Y. 2005) (rates of $250 to $350 per hour are unreasonably high for legal services in this district).

Moreover, this Court has no basis for determining whether the time allegedly spent on this investigation was reasonable. The investigator's own "Piracy Affidavit," which is attached as Exhibit C to Plaintiff's Affidavit for Default, indicates that the investigator was inside Las Flores Restaurant for 17 minutes, and returned three days later to take two photographs of the exterior of the restaurant. In light of the poor quality of the two photographs attached to the Piracy Affidavit, it seems highly unlikely that the photography took 43 minutes. Accordingly, there is nothing to indicate how the investigator spent most of the hour for which he charged plaintiff.

Because of these deficiencies in the evidence concerning the investigative costs, this Court declines to award such costs. Judge Azrack's recommendation is therefore modified to the extent of reducing the costs to be awarded to plaintiff from $750.00 to $650.00.

## CONCLUSION

For the reasons stated above, Judge Azrack's Report and Recommendation, dated March 20, 2006, is modified to the extent of reducing by $100.00 both the costs to be awarded – from $750.00 to $650.00 – and the total amount to be awarded – from $13,575.00 to $13,475.00. Judge Azrack's Report and Recommendation is adopted in all other respects. The Clerk of Court is directed to enter judgment in accordance with that Report and Recommendation, as modified by this Memorandum and Order.

**SO ORDERED.**

/s/ SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
April 6, 2006